Next and final case for argument is 23-2266 Pirelli Tyre v. United States. Counsel, please proceed. Thank you, Your Honor. May it please the Court, Daniel Porter on behalf of Pirelli. Pirelli challenges the Commerce Department's conclusion that the Chinese government controlled the operations of Pirelli Italy, an iconic Italian corporation listed on Milan's soft exchange. Commerce's decision is both unlawful and unsupported by substantial evidence. Commerce's decision is unlawful because Commerce's separate rate analysis did not attempt to demonstrate how its theory of control influenced Pirelli Tyre's export functions, even though it was undisputed that the Chinese-owned shareholders had less than majority ownership. Can I just ask, what's wrong with the fairly simple-minded thought that if the government can choose the personnel, it basically controls all the decisions made by the personnel? That is, choice of personnel is not task-specific. Judge Toronto, the question is understood. In these cases, the question is, what is the contrary evidence that, in fact, the de facto operations of the company were not controlled by the Chinese shareholders? In this particular case, we have an abundance of contrary evidence. Specifically, to your point, here, for this particular time period, the Chinese government shareholders' holding was reduced less than 50%. Yes, they could appoint some directors, but eight of the 15 members of the board were independent directors. Perhaps most importantly, there are explicit provisions that says the operations of Pirelli were to be done exclusively by the CEO, Mr. Tronchetti Prevera. Yes, absent other evidence, Judge Toronto, you're correct. If you have the ability to sort of appoint the board, perhaps that's enough. In this case, there was contrary evidence that we submit that the Commerce Department did not properly take into account. I think, yes, I'm sorry, Judge Chen, did you have a question? Just to clarify, there's precedent of ours, a case called Sigma, that seems to suggest that not only is there a rebuttable presumption of government control, but also that the burden of proof is on the exporter to show an absence of government control. Not only is the presumption, against you, but you're also the party that carries the burden of proof. Do you have a differing view than my understanding of Sigma? I do not have a different view of your understanding of Sigma. I want to note a of things. First, yes, there is a rebuttable presumption. In our brief, we just sort of say a rebuttable presumption is a legal term that we're not so sure the Commerce Department is properly understanding and implementing. It is also true that historically, the Commerce Department has always dealt with evidence. My interpretation is that the presumption is there primarily when there's no contrary evidence advanced. Then the Commerce Department, if you have a number of Chinese exporters and they don't respond in any way, the Commerce Department is allowed to essentially apply the presumption, say, you're controlled by the Chinese government. This is not that case. This is a case in which substantial contrary evidence was provided. The other very important distinction I want to make is many, if not most, of the past decisions of this court on this topic have to do where the respondent was majority controlled by the government. There have been relatively few cases in which the respondent was only minority controlled by the Chinese shareholders. Even the Commerce Department itself admits in that situation that need additional addition of control. It's a little bit how the presumption applies when you have a Chinese exporter that's not majority owned by the Chinese government. I would say that perhaps some of the cases that the government cites aren't directly on point on that. So just if I could clarify your response on what the legal test is and how we apply the You're saying, one, that the presumption should be lower because there's not majority ownership and or are you saying as long as contrary evidence is provided that's sufficient to meet the presumption or it has to be substantial contrary evidence? The question is understood. I would step back and saying the Commerce Department's determination must be supported by substantial evidence. That is literally the standard. And so the question is, is there substantial evidence that Pirelli Tire was de facto controlled by the Chinese shareholders? And that is the question under the standard of review. We believe that the department is Sorry to interrupt you, but I want to know how the presumption fits in to that analytical framework that you just discussed. Understood. Again, it is my view that the presumption is a starting out thing. We have no evidence. What should we do? Well, we can apply a presumption and make a conclusion because there's no evidence. That then allows you to say, I'm just going to go forward and say this Chinese exporter who didn't offer any evidence is controlled by the Chinese government. To me, once the Chinese expert comes forward with substantial contrary evidence, then the substantial evidence rule kicks in. And the question is, is the Commerce Department's conclusion that the respondent is controlled by the Chinese government, is that supported by substantial evidence? And that's how I believe the two are intertwined. So, if I may, with your indulgence, I would like to highlight, get to this idea of there was not substantial evidence for the Commerce Department's conclusion that Pirelli was controlled by the Chinese government shareholders. And I want to jump to the heart of our argument. The other side claims that Pirelli is asking this court to reweigh the evidence that Pirelli presented to Commerce because, according to them, Pirelli simply disagrees with how Commerce addressed the evidence. But such argument is just wrong. Many of Pirelli's substantial evidence arguments do not take issue with how Commerce addressed contrary evidence, but rather the fact that Commerce did not address contrary evidence at all. Such distinction is important because the substantial evidence standard requires that Commerce do so. And I'm quite sure you all are familiar with the substantial evidence standard. So, let me explain why Commerce's approach in this case did not satisfy the substantial evidence standard. Let me first talk about the alleged ability of the Chinese government shareholders to control Pirelli's board of In our view, Commerce does not adequately address the following contrary evidence. Only four of the 15 member board directors were Chinese nationals. Eight of the 15 member board directors were independent directors with explicit obligations under Italian law not to be beholden to any shareholder. And only four of the remaining seven board members were appointed by Chinese government shareholders. There was affirmative evidence that not a single independent director had any link to the Chinese government. Perhaps most importantly, your honor, the Chinese shareholders explicitly agreed and acknowledged the independence of the independent directors. We asked the court to take note of paragraph 4.6 addressing independent directors in the shareholders agreement. This can be found on page 1104. The paragraph 1104 is literally entitled independent directors. And this paragraph leaves no doubt that the Chinese government shareholders explicitly agreed that all independent directors appointed to Pirelli's board of directors shall have the requisites of independence prescribed for directors of listed companies by law and the governance code. And that's a quote. This provision demonstrates that the Chinese shareholders have explicitly agreed that the independent directors shall operate independently and such fact directly contradicts the Commerce Department's effective conclusion that these independent directors were beholden to the Chinese government shareholders. I think that's direct contrary evidence which the the export activities of Pirelli. We note there was an abundance of evidence that demonstrated that the day-to-day operations of Pirelli were completely insulated from any influence by the Chinese government shareholders. We refer your honors to page 33 of a reply brief that itemizes the multiple different pieces of supporting documentation on this point. In other words, the record evidence demonstrates that extensive steps have been taken precisely to ensure the independence of Pirelli's day-to-day management. In our view, commerce effectively ignores this evidence and claims that general provisions in Pirelli's bylaws trump the more specific provision in the shareholders agreement. We refer to tab A of the Pirelli separate rate agreement that starts on page 1087 and provides the 2017 shareholders agreement signed by the Chinese government shareholders. We ask the court to note paragraphs 4.4 and 4.7 which can be found on appendix pages 1103 and 1104. These provisions address the day-to-day management of Pirelli. These provisions make clear that the Chinese government shareholders have explicitly agreed that the CEO, Mr. Marco Tronchetti Privera, was delegated the exclusive power and authority concerning the ordinary management of Pirelli. I also want to quickly before my time runs out highlight the annual report because this is something that the comms department references and it's this, your honor, I believe epitomizes the lack of following the mandates of the substantial evidence standard by the comms department. The comms department cites a sentence in the annual report that says the company is indirectly controlled pursuant to article 93 of the Italian financial code by ChemChina and that can be found on page 0917. But literally, the very next sentence following that sentence explicitly contradicts the inference that the commerce is attaching to that sentence. If you look at the remaining sentences, it says that as of the first day of trading, ChemChina ceases to have any management and coordination activities over Pirelli and yet commerce ignores this. And this is, in my mind, the epitome of not following the mandate of the substantial evidence data and taking into account all contrary evidence. I see I only have a minute. I'm sorry, Judge Coates, do you have a question? No, but I was going to remind you, you're into your rebuttal time. I did not realize that. I'm going to stop now and save my time for rebuttal. Thank you. Thanks. Morning. Morning. May it please the court. This court should affirm the trial court's decision because at bottom, what Pirelli asked this court to do is both depart from this court's own well-established standards as well as reweigh the evidence. I'd like to start with a comment that Mr. Porter just made suggesting that there might be some difference in the standard of review or the level of presumption that's applied where a company is majority owned versus minority owned. But the trial court addressed this argument and Pirelli seems to have dropped it in front of this court and found that there is no difference in the standard. And this court has never countenanced such a difference. In fact, in Zhejiang Machinery, which is a decision that just came out, I think, where the respondent was minority controlled. And this court sanctioned commerce's ability to find that minority control can still be enough as long as commerce finds additional indicia of control. And so I think, again, Mr. Porter is just misstating the standard for what the presumption is and the respondent's burden to be able to basically prove that it is independent of government control. And there's no reason from this court to depart. What I understood he was saying was that most of the cases where the respondent has lost in these circumstances, most of them deal with majority. And there are only a small number of cases that deal with minority. And do you disagree with that observation in terms of the cases? I haven't done a rundown. I know that certainly some of those cases have dealt with ownership. But again, this court has never found any sort of difference to exist between majority and minority ownership. And in the recent Zhejiang Machinery case, that was a case involving minority ownership, where the court basically approved commerce's methodology for finding that when there's minority ownership, commerce looks for additional indicia of control before deciding whether the respondent had met the de facto criteria or not. And here, commerce did exactly that with respect to factor three, which is autonomy from this government in selecting management. And commerce found, based on multiple pieces of record evidence, that Pirelli had not rebutted the presumption that it was independent from the Chinese government in making decisions regarding the selection of management. I do really want to quickly address Pirelli's argument that somehow commerce is required to discuss specifically some sort of link to export activities or functions with regard to each factor in the de facto analysis. And the trial court found, and I think Judge Toronto alluded, that that's simply not the case. There is, of course, that overarching finding that commerce is trying to make, whether a respondent has demonstrated autonomy in its export functions. But that doesn't mean that each criteria specifically has to address those functions. I think Judge Toronto asks, you know, if the government can choose its personnel, can't you reasonably infer that that means that the government could influence that personnel's choices? And the answer is yes. And commerce has explained this in front of the has made that statement in front of the trial court in another case. And the trial court sanctioned that, saying that you can make that reasonable inference that if the Chinese government has a say in selecting management, and that means that that management would inherently be able to affect that exporter's export functions or activities. So I'll just move to a couple pieces of the evidence that Pirelli discussed and that commerce discussed. And while Pirelli has been able to point to some pieces of evidence on the record, showing that they may be autonomous from the selection of management, commerce and the trial court pointed to multiple other pieces of evidence calling that into question. And again, the burden is on Pirelli to demonstrate that it rebutted the presumption of government control. Here, commerce and the trial court pointed to multiple statements in the annual report that Pirelli was controlling. Can I ask you, do you think, I think I understood Mr. Porter to be saying that as part of the obligation of commerce to have substantial evidence in support of its finding, or at least as part of our review, it is important that there be substantial, the facts found, be reasonably found on consideration of all of the evidence, so that if there are important pieces of evidence not addressed by commerce, that's a problem. How do we think about that? Well, I think you're referring to Mr. Porter's statement that commerce is required to address certain contrary evidence or arguments raised by the respondent. And I think there's a few issues with that. Number one, I think that commerce did address at least some of Pirelli's arguments, particularly regarding Mr. Prevera's authority versus his obligation to report to the board. Commerce certainly discussed that. And Pirelli also made an argument regarding proprietary know-how that commerce discussed, but I think Pirelli's dropped that particular argument here. But the wrinkle, I think, in this case is that a couple of the other arguments that Pirelli made specifically relied on provisions of Italian law. And I think that relates largely to the fact that commerce found that the Chinese state-owned entity appointed the majority of the board of directors, and Pirelli responded that while that may be the case, some of those directors were required to be independent under Italian law. And commerce didn't ignore this. They addressed this argument. But what they did was find that Pirelli hadn't put that law on the record, and therefore commerce couldn't or wouldn't address it in the first instance. No, I don't remember. But when Mr. Porter was identifying a handful of important, what he says were important pieces of evidence that commerce did not discuss, I don't remember that any of those turned on any content of Italian law. Maybe one of them did about what it means to be independent, but I thought most of the others were not that. They had to do with, I don't know, not the bylaws, but some other internal company document and a variety of other things. I guess I want you to address the things that Mr. Porter addressed, that focused on. It's not enough to say, well, commerce discussed a lot of other things to meet an argument that says there are some really important things that commerce did not discuss. And by the way, it has to discuss those things. That's a two-part point. Maybe they don't have to address all of it. I mean, I think that for one, I think Pirelli or Mr. Porter might have been sort of understating the reliance on Italian law made by Pirelli, both in front of and in front of this court. If you look at Pirelli's arguments in its brief, they refer consistently. I'm sorry. I guess if maybe you don't recall, certainly I don't recall, so I wouldn't understand it. The specific items that Mr. Porter discussed this morning, forget about what it said in its brief here or below. I mean, one of the things he addressed this morning, I believe, had to do with the independence of the directors. But I think you're talking aside from that particular argument, which is based on Italian law. But I think he also talked about statements in the annual report that Pirelli would cease to, that I think its shareholders might cease to exercise management over certain activities. And I think those statements were made maybe in the annual report or the bylaws in addition to the statements that were clearly made as to ChemChina, the state-owned entity, having control over Pirelli. And I think to that extent, commerce did, I don't remember, sorry, what I don't remember is if Pirelli made that argument regarding management and coordination, specifically in front of divorced from that Italian law. So I think unless they did so, commerce wouldn't have been under any obligation to address it without that Italian law on the record. And I also think that commerce is required to rationally explain its decision and rationally explain the evidence it relied on. What I don't think that Mr. Porter can cite evidence for or authority for is a proposition that commerce is required to address in detail every single little facet of every piece of evidence that- Right, but Brad, you can at least state the argument fairly. He doesn't say every little facet. He says all important facets, which at least under arbitrary and capriciousness review, which maybe doesn't apply here, is of kind of a standard stock in administrative law. I mean, I think the standard that applies here statutorily under 1516a is the substantial evidence standard. And here, I think that it's clear that whichever way you look at it, commerce's determination was supported by substantial evidence. It found based on substantial evidence on the record, the half a dozen pieces of information that it and the trial court cited, that Pirelli had not rebutted the presumption of de facto control. So even if Pirelli pointed to certain pieces of evidence that maybe could be considered contrary, either based or not based on Italian law, the fact is that the presumption, the burden still lies with Pirelli. And commerce's determination that Pirelli had not rebutted that presumption, had not established the lack of government control over selection of management, that decision was still supported by substantial evidence, multiple pieces of substantial evidence. I'm happy to answer any other questions that this court may have. Otherwise, I concede my last minute to Mr. Birch. Thank you, your honors. May it please the court, I don't believe I can add much to the government's presentation with the limited time I have. However, given the emphasis Pirelli rests on its claims about Italian law, at least in its briefing, I believe it would interest the court to know some of what has occurred under that Italian law, where last year the Italian government forced the restructuring of ChemChina's ownership. Excuse me, I'm sorry. Is this information in the record? And has the other side had a chance to respond to the arguments you're about to make to us? No, your honor. And that's exactly the point. There's a lot of facts that aren't on the record. And I'm sure Pirelli will forcefully tell you these facts were not before commerce. And I look forward to hearing Pirelli's counsel argue that commerce should not consider matters not properly placed before the record, because that's what Pirelli did with the matter of Italian law entirely. It didn't bring it up until briefing before commerce. Pirelli tried to force commerce and asks you today to take some enormous leaps of logic, claiming that Italian law uses terms like independent director and has protections for minority shareholders, hoping that you will just assume that the existence of that law means that ChemChina and Pirelli, their relationship was factually compliant with that law. As I was just saying, that's been rejected by the Italian government multiple times now, who is currently looking at whether or not Pirelli will have to be sold. Commerce promptly declined. I'm having a hard time. And if my colleagues disagree, I hope they'll say it and let you go on. But I'm having a hard time entering into the record new information on Italian law, which is an argument that you actually, in the first instance, ask us not even to consider. But I really don't see how your friend is going to have an opportunity to respond if you're introducing evidence that no one's ever mentioned before. I don't want to try to introduce new evidence here. I think you can make the point that commerce declined to dive off that logical cliff when Pirelli lays these claims. The only thing Pirelli tried to present to commerce is, here's Italian law. You have to assume we are compliant with that. Made no showing of that, commerce promptly declined to do that because there was no chance for it to develop any kind of record that would allow it to investigate the factual veracity of Pirelli's claims. There's no reason for this court to make that dive in place of the agency now, still lacking any meaningful investigation into the matter. Simply because Italian law exists, doesn't mean that factually, ChemChina didn't control Pirelli. And so that's a major flaw in how Pirelli has approached this. And that's why the trial court, the CIT, very considerably said the existence of Italian law isn't something that commerce had to consider. It's very direct on that point. And this isn't a backdoor for Pirelli to try and get facts before commerce now. So a couple of additional points. Toronto, to your question about these points that Pirelli's raised, I'd point to one of them, the one that Mr. Porter says the epitome of the issue, about this second statement in their annual report, where Pirelli, commerce looked at the first statement in the annual report, where it explicitly said Pirelli is controlled by ChemChina. And he says, we have to look at the second statement that he argues states with more authority that Pirelli was no longer subject to Chinese control. But that second statement here and throughout their briefing, Pirelli likes to quote only part of that statement, but you can read the more complete statement on page 24 of Pirelli's reply brief. If you do, you'll know what's being referenced about the plain lack of management coordination isn't any decision by the Italian court or legal authority, it's a by Pirelli's board of directors. So on one hand, you have the statement that Pirelli was required to make under Italian law that they are controlled by ChemChina. Now, on the other hand, you have the declaration of their board of directors and that board of directors that was majoritarily appointed by ChemChina, pronouncing that they are free of ChemChina's control. There is no merit to Pirelli's claim the first statement must be disdained and the second statement by their directors be given controlling weight to the question here. Throughout its determination, Congress properly weighed the body of evidence before it and came to a conclusion that's fully supported by substantial evidence and could be accepted by any reasonable mind. I'm out of time, so I'll stop there. Thank you. We will give you three minutes of rebuttal. Turning back to Mr. Porter. Apologies, Your Honor. I didn't realize I had muted my microphone. A couple of points, just I think a more minor point. The case relied upon the government jing-jong machinery. In fact, in that case, both the Commerce Department and the court agreed that Pirelli's claim the union, which was controlled by China, had majority control. This was not a minority ownership case at all. That case was just a majority. A couple of important points. Our case 100% stands if you completely ignore Italian law provisions that we provided to the trade court. Our case is based on documentation that was submitted as part of the separate rate application, including the annual report and the shareholders' agreement. Our case rests, well, some other documents upon these documents. So the whole Italian law thing is a complete red herring. I believe that we were correct in the way we approached it, but you don't need to accept that. You can look at the documents that were given to Commerce as part of the separate rate application, including the annual report and the shareholders' agreement. Now, with respect to two other points. Government counsel says that our entire argument about independent directors rests on Italian law. That is not true. Our argument about independent directors rests on the term independent director. The Commerce Department says they can completely ignore the term independent. It is undisputed that eight of the 15 members of the board of directors were independent directors. The term independent director has meaning, yet the Commerce Department claims that they can ignore that meaning. There's no basis for that. The next thing is on the statements in the annual report, which we claim are contrary to Commerce's citing of one sentence. Mr. Birch went on and on about how he could interpret it differently. But guess what? Mr. Birch is not the Commerce Department. Everything Mr. Birch said, you cannot find in the Commerce Department's decision memorandum. The court knows it has to look at what did Commerce cite? What did Commerce say was justification for their decision? They didn't address the contrary evidence, and that is why their determination is not supported by substantial evidence. Thank you, Your Honor. Thank you very much. Thank all parties and the cases submitted. That concludes our proceeding for this morning.